# EXHIBIT 1

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

| | |
|---|---|
| IN THE STATE OF SOUTH CAROLINA<br>COUNTY OF ORANGEBURG | IN THE COURT OF COMMON PLEAS<br>FOR THE FIRST JUDICIAL CIRCUIT |
| KIMBERLY MURRAY, | CASE NUMBER: 2021-CP-38-_____ |
| Plaintiff, | |
| v. | **SUMMONS**<br>**(JURY TRIAL REQUESTED**) |
| FAMILY HEALTH CENTERS, INC., | |
| Defendant. | |

TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED and requested to answer the Complaint in this action of which a copy is herewith served upon you, and to serve a copy of your Answer to said Complaint upon the subscriber at her office, 8086 Rivers Avenue, Suite A, North Charleston, SC 29406, within thirty (30) days after service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff will apply to the Court for the relief demanded in the Complaint.

**WIGGER LAW FIRM, INC.**

_s/Tiffany P. Elling_____
Tiffany P. Elling, Esq.
Attorney for the Plaintiff
8086 Rivers Avenue
N. Charleston, SC 29406
Phone No.:  (843) 553-9800
Fax No.: (843) 553-1648
Email: telling@wiggerlawfirm.com

North Charleston, South Carolina
this 12th day of March 2021.

1

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

| | |
|---|---|
| IN THE STATE OF SOUTH CAROLINA<br>COUNTY OF ORANGEBURG | IN THE COURT OF COMMON PLEAS<br>FOR THE FIRST JUDICIAL CIRCUIT |
| KIMBERLY MURRAY, | CASE NUMBER: 2021-CP-38-_____ |
| Plaintiff, | |
| v. | **COMPLAINT**<br>**(JURY TRIAL REQUESTED**) |
| FAMILY HEALTH CENTERS, INC., | |
| Defendant. | |

The Plaintiff by and through undersigned counsel, complaining of the Defendant would show unto this Honorable Court as follows:

<u>JURISDICTION AND PARTIES</u>

1. The Plaintiff, Kimberly Murray, is a citizen and resident of Berkeley County, South Carolina.

2. The Defendant, Family Health Centers, Inc. (hereinafter referred to as "FHC"), upon information and belief, is a non-profit, headquartered and incorporated in the State of South Carolina.

3. This is an action for breach of an employment contract and violation of South Carolina Payment of Wages Act.

4. The acts or omissions give rise to this complaint occurred within the County of Orangeburg, State of South Carolina.

5. The parties, matters, and all things and matters alleged are withing the jurisdiction of this Court based in part upon the provisions of the Code of Laws of South Carolina, Sec. 36-2-803, as amended.

<u>STATEMENT OF FACTS</u>

6. On or about September 18, 2018, Plaintiff and Defendant FHC entered into a three year employment contract where Plaintiff would provide services to Defendant FHC as a Nurse Practitioner in exchange for an annual salary plus bonuses as specified in the contract (see attached Exhibit A).

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

7. Pursuant to the contract the parties agreed to amend Plaintiff's schedule to Saturdays from 9:00am to 3:00pm on November 13, 2019 (see attached Exhibit B).

8. On or about July 13, 2020, Defendant breached the contract when they sent Plaintiff written notice informing Plaintiff that her employment status was changing from an exempt pay status to a non-exempt pay status and Plaintiff would only be paid for the hours worked instead of her agreed upon salary.

9. Defendant FHC informed Plaintiff the changes would be reflected in her July 15, 2020 paycheck, just two days from the notice regarding the change.

10. Defendant continued to refuse to pay Plaintiff her salary as agreed upon in the Employment Agreement contract.

11. On or about January 29, 2021, Defendant closed the clinic the Plaintiff worked at without informing her.

12. Plaintiff contacted Human Resources and the CEO Leon Brunson multiple times about the clinic being closed and what hours she would be working. Defendant failed to assign Plaintiff to a new schedule effectively discharging her on January 29, 2021.

<u>FOR A FIRST CAUSE OF ACTION</u>
**Breach of Contract**

13. The Plaintiff reiterates each and every allegation above as if fully repeated herein verbatim.

14. That on or about September 18, 2018, Defendant entered into a contract (Exhibit A) whereby it agreed to employ the Plaintiff for three (3) years. The Defendant was to pay the Plaintiff a salary, plus benefits.

15. The Defendants changed Plaintiff's employment status and pay without a written agreement and without the Plaintiff's consent, beaching the contract of employment between the Plaintiff and the Defendant.

16. That as a direct and proximate result of the change in Plaintiff's pay and termination, the Plaintiff suffered loss of income and benefits; she has been deprived of contractual rights conferred by aforesaid contract and has had to initiate a lawsuit to enforce the contract.

17. Accordingly, the Plaintiff is informed and believes that she is entitled to actual damages, punitive damages and compensatory damages in the nature of the value of her lost wages and benefits and reasonable attorney's fees and costs for the bringing of this action.


<u>FOR A SECOND CAUSE OF ACTION</u>

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

**Violation of South Carolina Payment of Wages Act**

18. The Plaintiff reiterates each and every allegation as if fully set forth herein.

19. The Defendant's unilateral attempt to change the Plaintiff's pay without giving written notice as mandated in South Carolina Code §41-10-30.

20. The Defendant wrongfully withheld Plaintiff's wages and the Defendant should be required to pay the Plaintiff for all wages owed to her, plus interest from the date they reduced her pay in violation of the statute.

21. The Plaintiff is entitled to an award of damages against the Defendant in the amount to be determined by the trier of fact, also because the damages relate to wages owed to her, Plaintiff is entitled to treble damages pursuant to the South Carolina Payment of Wages Act, South Carolina Code of Law §41-10-80, 1976, as amended plus attorney fees and costs.

FOR A THIRD CAUSE OF ACTION
**Violation of Fair Labor Standards Act**

22. The Plaintiff repeats and reiterates the foregoing allegations as though repeated herein verbatim.

23. The plaintiff was working for the Defendant and accrued earned wages. The Defendant has failed and continues to fail to pay the wages owed to the Plaintiff in violation of the Fair Labor Standards Act of 1938 (FLSA).

24. The Plaintiff is informed and believes that the Defendant was unjustly enriched in maintaining wages which rightfully belong to the Plaintiff pursuant to the FLSA.

25. As the direct and proximate result of the act, omissions, and practices of the Defendant, the Plaintiff sustained a loss of income and wages.

26. As a direct and proximate result of the acts and practices of the Defendant, the Plaintiff is informed and believes he is entitled to an award of damages, liquidated damages, treble damages, prejudgment interests, costs, legal fees, and any other damages to which he may be entitled as determined by the tier of fact.

FOR A FOURTH CAUSE OF ACTION
**Conversion**

27. The Plaintiff repeats and reiterates the foregoing allegations as though repeated herein verbatim.

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

28. The Defendant committed conversion against the Plaintiff in the following particulars to wit:

    a.  In wrongfully withholding the Plaintiff's money from her possession;

    b.  In withholding the Plaintiff's money with the intent to permanently deprive and defraud the Plaintiff of use and benefit of the money; and

    c.  In withholding the Plaintiff's property with the intent to permanently appropriate the property for the use of the Defendants or any other person other than the Plaintiff.

29. The Defendant also committed conversion against the Plaintiff by not surrendering the money upon her request for wages owed to her.

30. The Defendant converted said funds to their own use.

31. The Defendant actions were without right or justification and constituted the conversion of the Plaintiff's property.

32. The Defendant acted maliciously and in bad faith in that they knowingly converted the Plaintiff's funds when in the exercise of reasonable care, they should have known its actions were wrongful.

33. That as direct and proximate result the Plaintiff has suffered a loss of income and has been otherwise injured and damaged in such amount as a judge and jury may determine.

FOR A FIFTH CAUSE OF ACTION
**Unjust Enrichment**

34. The Plaintiff repeats and reiterates the foregoing allegations as though repeated herein verbatim.

35. Based upon the agreement between the Plaintiff and the Defendant, the Plaintiff performed services for the defendants in exchange for a sum of wages. The Defendant has failed and continues to fail to pay the monies owed to the Plaintiff as agreed.

36. The Defendant was unjustly enriched in maintaining wages which rightfully belong to the Plaintiff.

37. As a result of the Defendant's unjust enrichment, the Plaintiff is entitled to an award of damages against the Defendant in an amount to be determined by the trier of fact.

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

38. That as a direct and proximate result of said conduct on the part of the Defendant, their agents and servants, the Plaintiff has been damaged as aforesaid, both actual and punitive, in such amount as a judge and jury may award.

WHEREFORE, Plaintiff prays for the following relief:

1. Judgement in favor of the Plaintiff and against the Defendant for all causes of action in an amount which is fair, just and reasonable, and for compensatory damages;

2. Prejudgment interest, costs and attorney's fees as may be allowed by law;

3. Judgement in favor of the Plaintiff and against the Defendant for past wages, treble damages, actual damages, lost benefits and any other work benefits she lost in an amount determined by the trier of fact; and

4. Judgement against the Defendant for actual damages, punitive damages, legal fees, costs and any other relief this Honorable Court deems just and proper.

Respectfully submitted,

**WIGGER LAW FIRM, INC.**

s/Tiffany P. Elling
Tiffany P. Elling, Esquire
Attorney for Plaintiff
8086 Rivers Avenue, Suite A
North Charleston, SC  29406
(843) 553-9800

North Charleston, South Carolina
This 12th day of March 2021.

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

# EXHIBIT A





ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

<u>THIS AGREEMENT IS SUBJECT TO ARBITRATION PURSUANT TO SOUTH CAROLINA CODE ANN. § 15-48-10 *et seq.*</u>

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") is made and entered into this _____ **day of September, 2018**, to be effective on the Effective Date (as hereinafter defined), by and between Family Health Centers, Inc. ("FHC") and <u>**Kimberly Murray**</u> ("APRN"), together jointly referred to as the "Parties."

WHEREAS, FHC is a non-profit community health center; and

WHEREAS, FHC identified APRN as qualified and negotiated with APRN regarding terms of employment upon which APRN would work for FHC; and

WHEREAS, APRN desires to become an employee of FHC; and

WHEREAS, APRN will be licensed to practice medicine in the State of South Carolina prior to the employment starting date and throughout the contract period.

NOW, THEREFORE, for and in consideration of the foregoing premises and mutual covenants and conditions contained herein, and intending to be legally bound, the Parties hereto agree as follows.

1. **Recitals:** The above recitals are true and correct and incorporated herein.

2. **Scope of Services and Duties:**

   a. APRN shall:

      i. devote substantially his/her entire professional time and attention to serving patients and the business affairs of FHC;

      ii. render ambulatory medical care, on call service rotation, and other health care services in conformity with the Health Care Plan;

      iii. provide exemplary services and care to patients;

      iv. strive to achieve productivity at 4,200 patient encounters per year;

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

    v.  perform such administrative duties as FHC may assign;

    vi.  follow FHC's policies, practices, and procedures;

    vii.  keep and maintain appropriate legible records relating to all professional services rendered, and shall be responsible for preparing necessary medical reports and correspondences;

    viii.  act professionally and ethically in all business and personal endeavors and refrain from actions and deeds that would impugn or damage FHC's image and reputation;

    ix.  fulfill other duties and responsibilities conferred hereunder or assigned by FHC; and

    x.  work a minimum of 40 hours per week in accordance with a work schedule developed by FHC.  FHC reserves the right to schedule the work hours and days of work of APRN and to modify the schedule as the needs of FHC require.

    xi.  maintain and provide for file (1) a license to practice in the State of South Carolina; (2) federal DEA license; (3) SC DEA license.

    xii.  E-prescribe all medications to an FHC or 340b pharmacy.

b.  APRN shall not, without the express prior written consent of FHC, directly or indirectly, during the term of this Agreement render services of a professional nature to any person or firm for compensation or engage in any activity competitive with and/or adverse to FHC's purposes, mission, or interests, whether alone, as a partner, or as an officer, director, employee, trustee, fiduciary, shareholder, or other representative of any other person, corporation, or entity.

c.  FHC hereby specifically undertakes to make available to the APRN the advice and assistance of all or any of the other APRN-employees employed by FHC for the provision of medical services to any person, and the APRN agrees to advise and assist on request any other APRN-employee of FHC in the provision of medical services to any person.

d.  APRN shall, according to his/her best medical judgment, refer all cases requiring specialty care or hospitalization to hospitals or specialists where appropriate treatment may be rendered.  Whenever possible, a referral should be made within an approved network consistent with the needs of the patient.

e.  APRN represents that he/she is not a party to any agreement, written or oral, that would impair or prevent his/her performance pursuant to this Agreement.

3.     Professional Liability Insurance:

a. FHC shall provide professional liability insurance coverage for the APRN. Such insurance is provided under the Federal Tort Claims Act umbrella.

b. FHC will not provide nor shall it reimburse APRN for coverage related to any services performed by APRN prior to employment by FHC or outside of the scope of employment pursuant to this Agreement.

4.     Confidential Information and Trade Secrets:

a. During the term of this Agreement and at any time thereafter, without the written consent of FHC, APRN shall not disclose information ("Trade Secrets") relating to the operations of FHC to persons other than the Board of Directors and officers of FHC or such governmental or licensing bodies or third-party reimbursement programs with whom FHC has directed or authorized the APRN to deal. "Trade Secrets" also shall include but not be limited to financial information, supplier lists, patient lists, contracts with any third parties, marketing and business plans, budgets, and all other information maintained in the normal operation of FHC that are not available to members of the general public.

b. FHC herein expressly reserves and does not waive any of its legal rights and remedies afforded to it by the South Carolina Trade Secrets Act, S.C. Code Ann. § 39-8-10, *et seq.*

5.     **Charging, Billing, & Collecting Professional Fees:**     APRN's professional fees generated pursuant to this Agreement shall be charged, billed, and collected as follows:

a. APRN shall cooperate with FHC in timely reviewing, completing, and submitting all necessary forms for third party reimbursement and in accounting for and collecting professional fees. APRN agrees to assist FHC in realizing the benefits of the Electronic Health Record ("EHR") Incentive Program, including but not limited to participating in the Medicaid or Medicare EHR Inventive Program as an Eligible Professional using Certified EHR technology, and providing attestations of adoption, implementation, upgrading and use of technology as requested or required by FHC or federal or state authority.

b. All fees charged for professional services rendered by the APRN after the Effective Date shall be determined by and shall be the property of FHC. Physician shall bill for all professional services rendered accurately and in good faith. FHC shall use its reasonable best efforts to collect all professional fees charged by APRN but shall not be liable for any failure or inability to collect for professional services rendered by the APRN.

c. APRN agrees to remit at once to FHC all payments received by the APRN from patient billings for services rendered after the Effective Date. Remittance shall be

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

accomplished by the endorsement of all checks, payable to the order of FHC with daily deposits of all cash receipt going to a FHC account.

d. Under no circumstances shall the APRN bill any patient directly for any services rendered pursuant to this Agreement.

e. APRN shall assign to FHC or its designees all rights the APRN may now or hereafter possess to receive income, payment and/or reimbursement for any and all professional medical services rendered by him/her to patients pursuant to this Agreement. The APRN shall immediately upon request execute such documents as may be necessary, desirable, or reasonably requested by FHC (1) to effectuate said assignment with respect to public and private third-party reimbursement programs and (2) to become a participating provider in any such third-party reimbursement programs. As used in this Agreement, the term "third-party reimbursement program" shall include but not be limited to health maintenance organizations, preferred provider organizations, private health insurance companies, employer sponsored programs, the federal Medicare program, the state Medicaid program, and the EHR Incentive Program.

f. All professional fees received by the APRN after termination of this Agreement that relate to services provided hereunder shall be endorsed and/or paid over to FHC as soon as practicable, but in any case within fifteen (15) days of receipt by Physician.

6.    **Compensation:**

a. <u>Salary.</u>  During this Agreement, APRN shall receive an annual salary of $80,000, payable in equal installments on the 15th and last business day of each month (or FHC'S regular pay periods for other employees).

b. <u>Bonus.</u>  Beginning September 18, 2018, at the end of each 6 month period for the duration of this Agreement, provided Provider has a minimum of 2,142 patient visits, zero deficient charts via the FHC chart audit form, and receives a favorable performance evaluation, Provider will receive a $5,000 bonus.

c. <u>Benefits.</u>  APRN shall be eligible for participation in and shall receive all benefits provided by FHC to its employees as expressed in the FHC Employee Manual. FHC reserves the right to terminate, amend, or modify the benefits provided to its employees, including APRN.

d. <u>Leave.</u>   APRN shall be eligible for participation in and shall receive all leave provided by FHC to its employees as expressed in the FHC Employee Manual.

e. <u>Fees for Services</u>.  All fees charged for professional services rendered by APRN to patients pursuant to this Agreement following the Effective Date, all payments made to him/her under any contract for professional services, together with all other benefits accruing to him/her as a practicing APRN of FHC, shall be the sole and exclusive property of FHC.

f.  <u>Full Satisfaction</u>.   APRN agrees that the compensation and benefits prescribed in this Agreement shall satisfy and discharge in full all obligations for compensation due to him/her for the provision of services to FHC and constitute adequate and just consideration in exchange for his/her entering into this Agreement. APRN acknowledges that his/her service hereunder does not confer upon him/her any ownership interest in or personal claim, except as provided herein or by law, upon any fees charged by FHC for or in connection with his/her services, whether the same are collected during his employment or after the termination thereof.

g.  <u>Continuing Education or Professional Development Costs</u>.  APRN shall be entitled to 3 days of paid leave per fiscal year to attend educational conferences or seminars in accordance with the FHC CME policy, approved in advance by FHC, and related to APRN's area of contractual responsibility.  FHC will reimburse APRN for reasonable, as determined by FHC, expenses related to continuing education but not to exceed $1,400 per fiscal year.

7.     **Term:**

a.  APRN's employment pursuant to this Agreement shall commence on **September 18, 2018 (the "Effective Date") and shall be for a term of three years**, unless earlier terminated as provided herein.

b.  At the termination of this Agreement, all rights of the APRN under the terms of this Agreement shall automatically cease as of the date of such termination, except as otherwise provided herein.

8.     **Termination:**

a.  <u>Termination For Cause by FHC:</u>  This Agreement may be terminated immediately by FHC "for cause" at any time.  "For cause" shall mean:

   i.  APRN's loss of license to practice medicine in the State of South Carolina;

   ii.  APRN's failure to attain or maintain board certification;

   iii.  APRN's permanent or temporary loss of Drug Enforcement Agency ("DEA") license to dispense drugs;

   iv.  APRN's conduct, actions, or omissions that FHC, in its sole discretion, deems to be unprofessional, unethical, or otherwise detrimental, harmful, or unfavorable to FHC or FHC's image, reputation, patients, or employees;

   v.  APRN's participation in any fraud, embezzlement, dishonest, unethical conduct or act;

   vi.  APRN's arraignment or indictment for a felony crime;

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

vii.   Funding becoming unavailable from the Department of Health and Human Services ("DHHS"); or

viii.  The dissolution or winding up of FHC.

b.   <u>Termination on Death or Disability:</u>  APRN's employment shall terminate automatically upon APRN's death during the Term of this Agreement. If disability due to mental or physical impairment prevents APRN from performing his/her duties hereunder for a period of 90 consecutive days, FHC may give to APRN written notice of termination of APRN's employment, and APRN's employment shall terminate effective on the date specified in such notice.

c.   <u>Termination upon 90 Days' Notice:</u> This Agreement may be terminated by either Party upon 90 calendar days' written notice.

9.   **Covenant Not to Solicit Employees**:  During this Agreement and for a period of one year following termination of this Agreement, APRN shall not, directly or indirectly, employ, solicit for employment, or endeavor in any way to entice from employment any current or former employee of FHC.

10.   **Interference:**  Upon termination of this Agreement and for a period of one year thereafter, APRN shall not influence or attempt to influence any payor, third-party reimbursement program, provider, or other person or entity to cease, reduce, or alter any business relationship with FHC that existed during APRN's employment with FHC.

11.   **Non-Compete:**

a.   During the term of this Agreement and for a period of one year following the termination of this Agreement, APRN shall not, within 45 miles nor without the prior written consent of FHC, singularly, jointly, through others, or as a member, employee, or agent for any person or entity, or partner of any partnership or as an officer, agent, employee, or director, or investor of any other corporation or entity, or in any other capacity, engage in either competitive activities or provide services which compete with FHC by calling upon, suggesting to others that they be called upon, revealing the existence of, soliciting, diverting, taking away, or attempting to solicit, divert, or take away, or do business with any of FHC's patients that APRN treated, saw, or dealt with during the last nine months that APRN was employed by FHC

b.   APRN acknowledges that, during his/her employment, he/she will be provided with the use of and access to trade secrets and confidential information. APRN recognizes that, he/she will have access to and will come into contact with confidential information belonging to FHC and obtain personal knowledge of and influence over FHC's patients and/or employees. APRN therefore agrees that the restrictions contained in Sections 10, 11, 12, and 13 are reasonable and necessary to protect the legitimate business interests of FHC, as contemplated herein. APRN acknowledges that there may be defenses to the enforceability of said restrictions based on time, territory, public policy, or other considerations, and that Physician knowingly, consciously, intentionally, and entirely voluntarily, irrevocably waives any and all such

defenses and will not assert the same in any action or other proceeding brought by FHC for the purpose of enforcing the restrictive covenants or in any other action or proceeding involving such restrictive covenant.

c. The parties acknowledge and agree that smaller, more narrow, or less restrictive scope and/or terms of the restrictive covenants set forth in Sections 9, 10, and 11 of this Agreement would not effectively protect FHC's legitimate business interests and would cause irreparable harm, injury, and damages to FHC.

d. The parties acknowledge and agree that the restrictive covenants set forth in Sections 9, 10, and 11 of this Agreement are fair, valid, and reasonable in all respects, and the geographic scope and temporal limitations expressed herein are not overbroad or unduly burdensome and will not preclude, restrain, or hinder APRN in conducting his/her business, practicing medicine, and/or otherwise engaging in trade and commerce.

12.    **Injunction:**  The parties agree that a breach or threatened breach of Section 9, 10, or 11 of this Agreement will cause immediate irreparable harm to FHC for which legal remedies alone are inadequate to compensate. APRN agrees that the provisions of this Agreement shall be enforceable by equitable process of injunction in addition to any monetary damages, sanctions, or other legal remedies available, plus recovery by FHC of its reasonable attorney's fees and expenses incurred in enforcing these provisions.

13.    **Records:**

a. All records, reports, claims, and correspondence relating to patients ("Records") are and shall remain the property of FHC, and APRN shall have no ownership interest or right in such Records.

b. APRN shall not be entitled to keep or preserve any Records unless a patient specifically requests that such Records be released to the APRN, in which event the APRN shall be entitled to a copy of same.  However, APRN shall have access to and the right to copy Records for reasonable professional purposes such as defense in administrative or judicial proceedings.

c. Nothing herein shall be deemed to modify any patient's right to records under the Physicians' Patient Records Act ("Act") or FHC's right to charge the patient for such records pursuant to the Act as set forth in Chapter 44 of the South Carolina Code Ann. as amended.

14.    **Notices:**  All notices and other communications hereunder shall be in writing and shall be given by hand delivery to the other party or be registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

<u>If to APRN:</u>         Kimberly Murray
                           302 Mendenhall St.
                           Summerville, South Carolina 29483

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

<u>If to FHC:</u>            Family Health Centers, Inc. ATTN: CEO
                     Post Office Box 1806
                     Orangeburg, South Carolina 29118

    Notice and communications shall be effective when delivered if by hand delivery and three days following any mailing.


    15.    **Arbitration**

        APRN and FHC agree that any dispute, controversy or claim rising from this Agreement or from the employment relationship shall be submitted to final and binding arbitration in accordance with the Federal Arbitration Act ("FAA"), or if the FAA is deemed inapplicable then and only then, in accordance with the arbitration laws of the State of South Carolina.  Such arbitration shall be governed by the employment arbitration procedures and rules for non-union employees administered by the American Arbitration Association as now in force or hereafter adopted or amended.  A judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.  This arbitration provision shall not preclude FHC from obtaining preliminary or other injunctive relief in a court to enforce Sections 9, 10, or 11 herein, without regard to whether any such claim has been or can be referred to arbitration.

    16.    **Benefit and Assignment:**  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.  This Agreement and the APRN's rights and obligations hereunder may not be assigned by the APRN without the express written consent of FHC.

    17.    **Amendments / Waiver:**  This Agreement may not be amended or modified in any manner except by an instrument in writing signed by each of the parties hereto.  The failure of any party hereto to enforce at any time any of the provisions of this Agreement shall in no way be construed to be a waiver of any such provision or the right of any party thereafter to enforce each and every such provision.  No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach.  Furthermore, all remedies are cumulative, including the right of either party to seek equitable relief in addition to money damages.

    18.    **Survival of Covenants:**  All covenants made herein, and all remedies relating thereto, shall survive the termination of this Agreement for any reason.

    19.    **Entire Agreement:**  This Agreement contains the entire agreement of the Parties and may not be changed orally but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

    20.    **Severability:**  Should any clause or term of this Agreement be deemed invalid or unenforceable, the remaining terms shall continue in full force and effect.

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

21.    **Governing Law:** This Agreement shall be governed and construed in accordance with the laws of the State of South Carolina, except to the extent, if any federal law controls.

22.    **Captions:**  All captions or headings are included only for reference and shall not constitute substantive provisions of this Agreement.

23.    **Counterparts:**  This Agreement may be executed in counterparts, each of which shall be deemed an original and together shall constitute one and the same instrument.

24.    **Waiver of Breach:** The waiver by FHC of a breach of any provision of this Agreement by APRN shall not operate or be construed as a waiver of any subsequent breach by APRN.

25.    **Construction and Understanding:**

a.  This Agreement shall not be construed against its drafter but instead shall be construed liberally in the light most favorable to FHC in order to protect FHC's legitimate business interests, which include but are not limited to protecting its relationship with its patients and referral sources and protecting its confidential and proprietary information.

b.  APRN acknowledges that he/she (i) has consulted with or has had the opportunity to consult with independent counsel of his/her own choice concerning this Agreement and has been advised to do so by FHC and (ii) has read and understands the Agreement, is fully aware of its legal effect, and has entered into it freely based on his own judgment.

**THE UNDERSIGNED HAVE COMPLETELY READ THE TERMS OF THIS AGREEMENT AND FULLY UNDERSTAND THEM AND VOLUNTARILY ACCEPT THEM.**

Witness:

APRN:

Family Health Centers, Inc.

By:_____
Name: Leon A. Brunson, Sr.
Chief Executive Officer

9 of 9

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

# EXHIBIT B



**Family Health Centers, Inc.**

3310 Magnolia Street | Post Office Box 1806
Orangeburg, South Carolina 29115-1466
Phone (803) 531-6900
Fax (803) 531-6907
www.myfhc.org

ELECTRONICALLY FILED - 2021 Mar 12 3:36 PM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278

**Bamberg**
**Bamberg Job Corps**
19 Job Corps Avenue
Bamberg, SC 29003
P: (803) 245-5101
F: (803) 245-6310

**Denmark**
1241 Solomon Blatt Blvd
Denmark, SC 29042
P: (803) 793-4282
F: (803) 793-6346

**Holly Hill**
922 Holly St.
Holly Hill, SC 29059
P: (803) 496-7174
F: (803) 496-7928

**Neeses**
7061 Norway Road
Neeses, SC 29107
P: (803) 263-4086
F: (803) 263-4097

**St. George**
401 Ridge Street
St. George, SC 29477
P: (843) 563-5315
F: (843) 563-8229

**St. Matthews**
558 Chestnut Street
St. Matthews, SC 29135
P: (803) 874-2006
F: (803) 874-1998

**Vance**
10278 Old #6 Highway
Vance, SC 29163
P: (803) 492-3031
F: (803) 492-9156

November 13, 2019

Kimberly Murray
302 Mendenhall Street
Summerville, SC 29483

Dear Ms. Murray:

I am pleased to offer you the position of Family Nurse Practitioner with Family Health Centers, Inc. This position is located in the Extended Pediatric department at the Orangeburg site. The anticipated hours of work are Saturday 9:00 am – 3:00 pm beginning November 23, 2019 through February 1, 2020.

If you accept our offer, your signature below indicates that no other offer has been made of implied other than that which has been stated above.

Please sign below and return this letter to me, Leon A. Brunson, Sr., by November 15, 2019. I look forward to hearing a favorable response from you. Should you have any questions, please feel free to contact me directly at 803.531.6905 or via e-mail at leon.brunson@myfhc.org.

Very truly yours,

*Leon A B S*

Leon A. Brunson, Sr.
Chief Executive Officer

✓ _____    I accept the offer of employment
_____    I decline the offer of employment

*Kimberly Murray FNP*   11/14/19



IN THE STATE OF SOUTH CAROLINA )     IN THE COURT OF COMMON PLEAS
                                )     FOR THE FIRST JUDICIAL CIRCUIT
COUNTY OF ORANGEBURG            )
                                )       CASE NUMBER: 2021-CP-38-00278
Kimberly Murray,                )
                                )
                Plaintiff,      )     **ACKNOWLEDGEMENT AND**
                                )     **ACCEPTANCE OF SERVICE**
        v.                      )
                                )
Family Health Centers, Inc.,    )
                                )
                Defendant.      )
                                )

I, Hannah Stetson, as duly authorized attorney for Defendant Family Health Centers, Inc., hereby acknowledge my receipt and acceptance of service of a filed copy of the Plaintiff's Summons and Complaint on this ___13th___ day of ___April___, 2021 in Columbia, SC.

TURNER PADGET GRAHAM & LANEY, P.A.

Reginald W. Belcher, SC Bar # 11710
rbelcher@turnerpadget.com
Hannah D. Stetson, SC Bar # 101507
hstetson@turnerpadget.com
P.O. Box 1473
Columbia, SC  29202
Phone: (803) 254-2200
Fax: (803) 7993957
**ATTORNEYS FOR DEFENDANT**
**FAMILY HEALTH CENTERS, INC.**

ELECTRONICALLY FILED - 2021 Apr 13 11:27 AM - ORANGEBURG - COMMON PLEAS - CASE#2021CP3800278